Walter S. PACK, Plaintiff,

v.

Anthony J. CELEBREZZE, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. 1146.

United States District Court
S. D. West Virginia,
at Huntington.

March 8, 1963.

J. Paul Clark, Logan, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

Plaintiff seeks judicial review of the final decision of the Secretary of Health, Education, and Welfare that he was not entitled to a period of disability under Section 216(i) of the Social Security Act, as amended. For the reasons hereinafter stated, it is now found that the decision of the Secretary is supported by substantial evidence and that defendant's motion for summary judgment should be granted.

On February 17, 1959, plaintiff filed an application to establish a period of disability. This application was denied by the Bureau of Old-Age and Survivors Insurance both initially and upon recon-

sideration. On July 14, 1961, a hearing examiner also found that plaintiff was not entitled to a period of disability. Plaintiff then requested the Appeals Council to review the decision of the hearing examiner. This request was granted on September 22, 1961. The Appeals Council on April 26, 1962, after considerating the case de novo, similarly found that plaintiff was not entitled to the establishment of a period of disability based on his application of February 17, 1959, and, therefore, affirmed the hearing examiner's decision in a separate opinion. This decision of the Appeals Council became the final decision of the Secretary which is now before this court for judicial review.

In order to establish a period of disability plaintiff had to establish that he was under a disability that would continuously preclude him from engaging in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or to be of long-continued and indefinite duration on February 17, 1959, and that he met the special earnings requirements for the purpose of entitlement. The parties to this action do not dispute that plaintiff met the special earnings requirements. Consequently, that issue is not now before this court.

Plaintiff was 43 years old when the alleged disability began on November 21, 1955, and was approaching age 47 when the disability application was filed in which he alleged that the nature and extent of his impairment consisted of "lung trouble, weakness." The record indicates that he spent most of his working life in the coal mines. Among other things he worked as a motorman and brakeman. His last job in 1955 was as an operator of a shuttle buggy. Plaintiff admitted that the jobs of motorman and brakeman were rather easy work. Prior to the time he last worked in the mines in 1955, plaintiff was out of work for a time in 1953 or 1954 when the mine in which he was working closed. After leaving the mines, plaintiff worked about two months in 1956 as a common laborer on a hospital construction project. Later, he worked briefly scraping houses and doing various odd jobs. He has completed four grades of elementary school.

Plaintiff's chief complaint concerns his lungs although he also complains of arthritis, heart trouble, and eye weakness. At the hearing plaintiff admitted that he could read and write but that he needed glasses to do so. He could read both the large and the small print in the newspaper with glasses. His attorney conceded that he did not believe that there was any eye problem in this case. Furthermore, there is no medical evidence which would indicate that he had a disabling eye impairment. There is also no evidence that plaintiff has an arthritic condition which could be deemed disabling. In a report dated June 6, 1961, Dr. James H. Heckman stated that plaintiff does have some *mild* arthritic changes in the lumbar area but otherwise the examination was normal. He concluded his report by saying:

"We do not feel that the Orthopedic situation represents any real disability and regardless of the patient's complaints referable to his back we feel that he has no disability from an Orthopedic standpoint. * * * "

The clinical evidence clearly shows that plaintiff's heart is essentially normal. Physical examinations and chest X-rays made at the Man Memorial Hospital in 1959 and 1960 showed that his heart was normal. An electrocardiogram made in July, 1959, showed changes thought to be due to clockwise rotation, although the possibility of a remote anteroseptal injury pattern (old heart attack) could not be excluded. A second electrocardiogram made in July, 1961, showed no changes from the previous one. The diagnosis was *possible* coronary artery disease. Dr. Jack H. Baur in a report dated May 31, 1961, stated that plaintiff's cardiac silhouette was normal and that the electrocardiogram was within normal limits. Therefore, there is substantial evidence to support a conclusion that plaintiff does

not have a disabling eye, heart, or arthritic condition.

As to his primary difficulty, lung trouble, there is voluminous medical evidence. There can be no doubt that plaintiff does suffer from lung difficulty. There is, however, much conflicting evidence as to the extent of that trouble. To set out in detail all of this medical evidence would not only unnecessarily extend this opinion but also serve no useful purpose. However, the pertinent facts will be summarized below.

Dr. H. H. Cudden in a report dated June 13, 1958, diagnosed plaintiff's condition a "chronic bronchitis-emphysema." He also raised the possibility of silicosis. His diagnosis was apparently based on physical examination only. He recommended that plaintiff be sent to Dr. M. Lawrence White for X-rays of the heart and chest. Dr. White is associated in the practice of medicine with Dr. William B. Blake, Jr. In a letter to Dr. Cudden, dated August 20, 1958, Dr. Blake reported that plaintiff had been hospitalized for lung function studies and medical treatment. He emphasized that it was important for plaintiff to stop smoking (which he apparently did not do in view of the fact that he smoked at the hearing before the hearing examiner). In another letter to Dr. Cudden, dated December 19, 1958, Dr. Blake indicated that following treatment, pulmonary function studies showed the ventilatory capacity (function of moving air in and out of the lungs) had increased, but the oxygen absorptive capacity of the lungs had not improved correspondingly. He felt that there was a great deal of damage at the capillary-alveolar level (function of diffusion-transfer of air and oxygen from the lungs into the blood stream). Dr. Rowland Burns conducted pulmonary function studies and in a letter to Dr. White, dated January 19, 1959, noted that there had been a definite improvement in ventilatory function since prior tests in August, 1958. He felt that the major defect existed at the alveolar capillary level with impairment of gaseous exchange (diffusion). Dr. Burns felt that the diffusion was low, but there was no significant increase in functional residual nitrogen which would impair diffusion. He concluded that the difficulty might well result from persistent chronic bronchitis with alveolar capillary (diffusion) block.

On December 13, 1960, Dr. Blake was of the opinion that plaintiff suffered from severe emphysema and that his diffusion capacity was quite low. He also acknowledged that it was difficult to assess plaintiff because his breathlessness was completely out of proportion to the physical and X-ray findings. He was further of the opinion that plaintiff was disabled from doing any type of physical labor.

On September 27, 1959, Dr. John R. Wilkinson concluded that plaintiff was "apparently debilitated to a moderate extent with chronic lung disease." On September 23, 1960, Dr. Thomas F. Alderman stated that the impression at that time was, inter alia, "minimal pulmonary emphysema."

In a report dated May 31, 1961, Dr. Jack H. Baur, after conducting a complete consultative examination on May 29, 1961, concluded that:

"On the basis of these findings it is felt that this patient has chronic bronchitis and pulmonary emphysema, and probably early fibrosis on the basis of the mild restrictive type of ventilatory insufficiency indicated by the vital capacity, but his symptoms seem greatly out of proportion to the findings. He did develop dyspnea and wheezing with exercise, but this subsided promptly and there was no cyanosis to suggest an alveolar capillary block clinically. There also was no evidence of cor pulmonale electrocardiographically or clinically, and this would be expected if his symptoms were as severe as he indicated. It is felt that the disability associated with the chronic lung disease is enough to prevent him from pursuing his usual occupation as a miner or general laborer, but he should be able to do lighter-

types of work and it is not felt that he is totally disabled. * * *"

Dr. F. Viscuse in a report dated June 11, 1956, stated that plaintiff was unable to work full time "due to severe arthritis, asthma, and heart disease." There is little, if any, clinical evidence to support his diagnosis and opinion as to plaintiff's work capability. This opinion and a similar one expressed by Dr. Blake are clearly not binding on the hearing examiner, the Appeals Council, or this court, although such statements should be considered with all other evidence in the case and not summarily dismissed or disregarded. Underwood v. Ribicoff, 4th Cir., 298 F.2d 850 (1962). Concerning the weight to be given to the opinions of physicians as to whether an individual is disabled, Section 404.-1526 of the Secretary's Regulations (20 CFR 404.1526) provides:

"The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled,' 'totally disabled,' 'totally and permanently disabled,' 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments."

This court has given due consideration not only to these statements but also to the reports generally and to all other evidence of record, including additional conflicting medical testimony not mentioned above.

It is manifest that the medical evidence in this case is conflicting. This conflict has been resolved against the plaintiff not only by the hearing examiner but also the Appeals Council. This court's conclusions of fact and inferences arising therefrom cannot be substituted for those of the Secretary even though a different result might possibly have been reached had it been the arbiter of the facts in a de novo hearing. It is the decision of this court that there is substantial evidence to support the final decision of the Secretary that plaintiff is not entitled to the establishment of a period of disability based upon his application of February 17, 1959. Defendant's motion for summary judgment is granted.